**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DANIEL LOPEZ, et al.** | * | |
| | * | |
| **v.** | * | **Civil No.  DKC  07-2979** |
| | * | |
| **LAWNS 'R' US, et al.** | * | |
| | * | |

**REPORT AND RECOMMENDATION**

Plaintiffs brought this action against Defendants Lawns 'R' Us and Ivan King, alleging

violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.  (Counts I-V), the

Maryland Wage and Hour Law (MWHL), Maryland Code, Labor & Employment Art. § 3-401 et

seq. (Counts XII-XVII), and the Maryland Wage Payment and Collection Law (MWPCL),

Maryland Code, Labor & Employment Art. § 3-501 et seq. (Counts VI-XI).  The Clerk entered a

default against Defendants on January 15, 2008, Dkt. No. 7, and the case was referred to me

pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District

Court for the District of Maryland for preparation of this Report and Recommendation as to

damages.  Dkt. No. 8.  A damages hearing was held on May 2, 2008.  Dkt. No. 14.  At the

hearing, Plaintiffs moved to withdraw their demand for a jury trial, which motion I recommend

be granted since it is unopposed.

**I. Facts.**

Each of the five Plaintiffs appeared at the May 2, 2008, hearing and testified in support of

his claim for unpaid regular and overtime wages.  Defendants did not appear or otherwise submit

any evidence.[1]

---

[1] The court attempted service of the hearing notice by certified mail directed at Defendants' address of record, but the notices were returned and docketed as undeliverable.  Dkt. Nos. 12 and 13.

Plaintiff Daniel Lopez testified that he worked for Defendants for five weeks in early 2007, and maintained records of the hours he worked and the pay he received.  Mr. Lopez's rate of pay was $10 per hour.  He testified that his hours worked, pay received, and regular wages owed were as follows:

| Time Period | Hours Worked | Payment Received | Regular Wages Owed |
|---|---|---|---|
| Week One | 51 hours 15 minutes | $250 | $260[2] |
| Week Two | 59 hours 45 minutes | $300 | $294 |
| Week Three | 48 hours | $250 | $230 |
| Week Four | 71 hours 30 minutes | $0 | $715 |
| Week Five | 54 hours | $0 | $540 |

Thus, Mr. Lopez seeks $2039.00 in unpaid regular wages, and asks that it be trebled pursuant to the MWPCL, Labor & Employment Art. § 3-507.1(b), for a total of $6117.00.

Mr. Lopez further testified that he worked 84.5 hours of overtime during these five weeks, but was not paid any overtime premium.  He requested an overtime premium of $5 per hour, or $422.50, and liquidated damages under the FLSA, for a total of $845.00.  The total of Mr. Lopez's damages request is $6962.00.

Plaintiff Reynaldo Calel testified that he worked for Defendants from September 3, 2006 to December 3, 2006, and for five weeks in early 2007.  Mr. Calel maintained records of the hours he worked and the pay he received.  Mr. Calel's rate of pay was $10 per hour in 2006; $100 per day for the first week in 2007; and $11 per hour for the remaining four weeks in 2007. He testified that his hours worked, pay received, and regular wages owed were as follows:

---

[2] Certain of Plaintiffs' calculations are slightly incorrect, but as the apparent errors result in damage requests that are lower than the maximum Plaintiffs might have claimed, I will defer to Plaintiffs' testimony as to total amounts.

| Time Period | Hours Worked | Pay Received | Regular Wages Owed |
|---|---|---|---|
| Sept. - Dec. 2006 | [unspecified] | All regular wages owed | $0 |
| Week of Feb. 26, 2007 | [5 days; hours unspecified] | $0 | $500 ($100/day times 5 days of work) |
| Week of March 5, 2007 | 51 hours 15 minutes | $250 | $311 |
| Week of March 12, 2007 | 59 hours 45 minutes | $300 | $349 |
| Week of March 19, 2007 | 48 hours | $250 | $278 |
| Week of March 26, 2007 | 71 hours 30 minutes | $300 | $486.50 |

Thus, Mr. Calel requested $1924.50 in unpaid regular wages, trebled pursuant to the MWPCL, Labor & Employment Art. § 3-507.1(b), for a total of $5773.50.

Mr. Calel further testified that he worked overtime in both 2006 and 2007, but was not paid an overtime premium. Mr. Calel's overtime totaled 52 hours in September 2006; 51 hours in October 2006; and 50 hours in November 2006. Since he made $10 per hour during 2006, he requested a premium of $5 for each of these hours, for a total of $765. In addition, Mr. Calel worked 70.5 hours of overtime over the four weeks in 2007 during which he was paid $11 per hour. He requested a $5.50 premium for each of these hours, for a total of $387.75 for 2007. Mr. Calel's requested overtime premiums were $1152.75, which he asked be doubled to $2305.50 under the FLSA's liquidated damages provision. The total of Mr. Calel's damages request is $8079.00.

Plaintiff Mario Velasquez testified that he worked for Defendants from September 2006 until March 2007. Mr. Velasquez maintained personal records of his hours worked and pay

received.  His rate of pay was $12 per hour; his hours worked, pay received, and regular wages

owed were as follows:

| Time Period | Hours Worked | Pay Received | Regular Wages Owed |
|---|---|---|---|
| 2006 - February 2007 | [unspecified] | All regular wages owed | $0 |
| First week of March 2007 | 51 hours | $250 | $362 |
| Second week of March 2007 | 59 hours | $300 | $408 |
| Third week of March 2007 | 48 hours | $250 | $326 |
| Fourth week of March 2007 | 71 hours | $0 | $852 |

Thus, Mr. Velasquez requested $1948.00 in unpaid regular wages, trebled pursuant to the

MWPCL, Labor & Employment Art. § 3-507.1(b), for a total of $5844.00.

Mr. Velasquez further testified that he worked overtime in both 2006 and 2007, but was

not paid an overtime premium.  He worked the following overtime hours in 2006:

| Time Period | Overtime Hours Worked | Overtime Premium Owed |
|---|---|---|
| First week of September 2006 | 22 hours | $132 |
| Second week of September 2006 | 18 hours 30 minutes | $111 |
| Third week of September 2006 | 19 hours 30 minutes | $117 |
| Fourth week of September 2006 | 19 hours | $114 |
| First week of October 2006 | 7 hours 30 minutes | $45 |
| Second week of October 2006 | 18 hours 30 minutes | $111 |

| | | |
|---|---|---|
| Third week of October 2006 | 19 hours | $114 |
| First week of November 2006 | 15 hours | $90 |
| Second week of November 2006 | 16 hours | $96 |
| Fourth week of November 2006 | 4 hours | $24 |

He also worked 69 hours overtime during March 2007.  He requested a $6 premium for each of 259 hours of overtime worked, but his testimony supports only 228 overtime hours, for a total of $1368.  He asked for liquidated damages pursuant to the FLSA, which totals $2736.  Mr. Velasquez's total damages request, as modified, is $8580.00.

Plaintiff Feliciano Morena testified that he worked for Defendants for the last three weeks of March 2007.  Mr. Morena maintained records of his hours worked and pay received. His rate of pay was $200 per day, and his hours worked, pay received, and regular wages owed were as follows:

| Time Period | Number of Days Worked | Number of Hours Worked | Pay Received | Regular Wages Owed |
|---|---|---|---|---|
| Second week of March 2007 | 5 days | 60 hours | $450 | $550 |
| Third week of March 2007 | 4 days | 48 hours | $0 | $800 |
| Fourth week of March 2007 | 6 days | 71 hours 30 minutes | $0 | $1200 |

Thus, Mr. Morena requested $2550.00 in unpaid regular wages, trebled pursuant to the MWPCL, Labor & Employment Art. § 3-507.1(b), for a total of $7650.00.

Mr. Morena further testified that he worked overtime as indicated in the table above, but was not paid an overtime premium.  He requested one half of his effective hourly rate for each overtime hour.  During his first week, Mr. Morena worked 60 hours for $1000, or an hourly rate

of $16.66.[3]  In his second week, Mr. Morena stated that his hourly rate was $16.32.[4]  In the third

week, his hourly rate increased to $16.78, or $1200/71.5.  Thus, Mr. Morena requested $166.60

in unpaid overtime premiums for his first week ($8.33 times 20 hours of overtime); $65.28 for

his second week ($8.16 times 8 hours of overtime); and $264.28 for his third week ($8.39 times

31.5 hours of overtime), or $496.16 in unpaid overtime premiums.  Mr. Morena requested

liquidated damages under the FLSA, for a total overtime claim of $992.32.  In total, Mr. Morena

requested damages of $8642.32.

Plaintiff Juarez de Souza testified that he worked for Defendants for four months in 2006

and seven months in 2007.  He kept records of the number of days worked and the pay received.

Mr. de Souza's rate of pay was $1200 per 6 day week.  He stated that he was paid all regular

wages due him in 2006, but that he was underpaid regular wages in 2007, as follows:

| Time Period | Number of Days Worked | Regular Wages Earned | Payment Received | Regular Wages Owed |
|---|---|---|---|---|
| February 2007 | 5 | $1000 | $100 | $900 |
| March 2007 | 26 | $5200 | $2450 | $2750 |
| April 2007 | 24 | $4800 | $1900 | $2900 |
| May 2007 | 0 | 0 | $1000 | ($1000) |

Thus, Mr. de Souza requested $5550.00 in unpaid regular wages, trebled pursuant to the

MWPCL, Labor & Employment Art. § 3-507.1(b) for a total of $16,650.00.

---

[3] 29 C.F.R. § 778.109 provides that for employees who are not paid a specific hourly rate, overtime compensation is calculated on the basis of a regular rate, which may generally be determined by dividing pay earned in a particular workweek by the total number of hours worked in that week.  *See* 29 C.F.R. §§ 778.112 - 778.114 for application of this principle to the cases of workers who are paid a fixed amount for a day or week of work.

[4] There was an error in calculation, as $800 divided by 48 hours produces an hourly rate of $16.66, not $16.32.  I will defer to the lower number testified to by Mr. Morena.

In addition, Mr. de Souza testified that he had never received a premium for overtime hours.  Although he did not keep contemporaneous records of the number of hours he worked during each week in 2006 and 2007, he believed that he worked an average of 65 hours per week in each of 44 weeks.  Mr. de Souza thus requested an overtime premium of $9.23 per hour (based on an hourly rate of $18.46; $1200 per week divided by 65 hours worked), times 1100 hours (25 hours per week times 44 weeks), for a total of $10,153.00.  Mr. de Souza requested liquidated damages pursuant to the FLSA, for a total overtime claim of $20,306.00.  In total, Mr. de Souza requested damages of $36,956.00.

Plaintiffs additionally moved, with supporting documentation, for Attorney's Fees and Costs in the amount of $14,890.47.

## II. Analysis.

### a. Damages.

Plaintiffs seek damages for unpaid regular wages under the MWPCL (Counts VI-XI).  As to unpaid overtime premiums, they clarified at the hearing that they seek damages under the FLSA (Counts I-V) rather than the MWHL.

In cases such as the present one in which wage and pay records, required to be kept by employers pursuant to 29 U.S.C. § 211(c), are not available, Plaintiffs must show the amount and extent of their improperly compensated work "as a matter of just and reasonable inference." *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  An employee's testimony as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed.  *Donovan v. Kentwood Development Co., Inc.*, 549 F. Supp. 480, 485 (D. Md. 1982).  The burden then shifts to the employer to rebut

the prima facie case. *Id.; Anderson,* 328 U.S. at 687-88.  The Court may award damages based

on Plaintiffs' testimony even though the amounts claimed are only approximated and not

perfectly accurate. *Id.* at 688; *Donovan v. Kentwood Development,* 549 F. Supp. at 485-86.[5]

Each Plaintiff provided credible testimony as to his recollection of the hours he worked

and the pay he received, and Defendants have failed to rebut the inference created by the

Plaintiffs' evidence.  I therefore recommend that the Court find that Plaintiffs have satisfied their

burden of establishing that each did work for Defendants for which he never received

compensation as detailed above.

I.  *Unpaid regular wages.*  (Counts VI-XI*).*

Employees have a private right of action against employers who violate Sections 3-502

or 3-505 of the MWPCL.  Maryland Code, Labor & Employment Art. § 3-507.1(a).  In pertinent

part, these sections require that employees such as Plaintiffs be paid at least once every two

weeks or twice in each month; and that upon termination, they be paid all wages due for work

performed before the termination.  The principal purpose of these provisions is to enable

employees to collect, and encourage employers to pay, back wages. *Medex v. McCabe,* 372 Md.

28, 29 (2002); *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 363-64 (1995).

In addition to wages owed, the Court may award "an amount not exceeding three times

the [unpaid] wage" if the employer's violation of the MWPCL is not the result of a bona fide

---

[5] These standards apply to FLSA claims. *E.g., Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)*.*  I have not located analogous authority directing how the amount of unpaid wages should be determined under the MWPCL, but application of the FLSA standards is appropriate in light of Maryland's similar requirement that employers keep records of employees' hours and wages. *See* Maryland Code, Labor & Employment Art. § 3-424. Cases indicate that the same kind of evidence - including an employee's testimony - would be competent under Maryland law. *See, e.g., Higgins v. Food Lion, Inc.*, 197 F.Supp.2d 364, 367-68 (D. Md. 2002) (plaintiff failed to demonstrate issue of material fact for his MWPCL claim where he stated in deposition that he did not specifically recall having worked any off-the-clock hours, and where his contemporaneously-recorded notes did not reflect any unpaid work); *Turner v. Human Genome Science, Inc.,* 292 F. Supp.2d 738, 748 (D. Md. 2003) (applying FLSA burden-shifting scheme and standards of proof to an overtime case brought under both FLSA and the MWHL).

dispute about whether the wages are due.  Maryland Code, Labor & Employment Art. § 3-507.1(b).  A bona fide dispute may be found where the employer advances an objectively reasonable defense to the MWPCL claim.  *Gresham v. Lumberman's Mut. Cas. Co.,* 426 F. Supp.2d 321, 324-25 (D. Md. 2005).  The award of up to treble damages is at the discretion of the fact-finder.  *Admiral Mortg., Inc. v. Cooper,* 357 Md. 533, 549-50 (2000).  Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions, that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification.  *Admiral Mortg.,* 357 Md. at 549-51; *accord Imgarten v. Bellboy Corp.*, 383 F. Supp.2d 825, 848 (D. Md. 2005).

Plaintiffs request treble damages under the MWPCL, but I recommend that they be awarded only two times their unpaid regular wages.  The Defendants did not offer any evidence of a bona fide dispute, so that a punitive premium is appropriate.  Plaintiffs, however, did not offer any evidence of consequential damages suffered because of the underpayments.  The Court should therefore exercise its discretion to award half of the allowable liquidated damages.  The recommended awards for unpaid regular wages are:

| | |
|---|---|
| Mr. Lopez: | $  4078.00 |
| Mr. Calel: | $  3849.00 |
| Mr. Velasquez: | $  3896.00 |
| Mr. Morena: | $  5100.00 |
| Mr. de Souza: | $11,100.00 |

The total recommended award under MWPCL is $28,023.00.

*ii. Unpaid overtime wages.*   (Counts I-V).

The FLSA provides a private right of action for eligible employees who have not been paid one and a half times their regular rate of pay for any hours worked in excess of 40 per week. 29 U.S.C. § 216(b).  There is a presumption in favor of awarding successful plaintiffs liquidated, or double, damages.  *Mayhew v. Wells,* 125 F.3d 216, 220 (4th Cir. 1997); *Lockwood v. Prince George's County, Md.,* 58 F. Supp.2d 651, 657 (D. Md. 1999).  Liquidated damages may only be withheld if the employer convinces the Court that he acted in good faith and with reasonable grounds for believing that he was not violating the FLSA.  29 U.S.C. § 260; *Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 549-49 (4th Cir. 1998).

In the present case, Defendants offer no evidence of their good faith in trying to comply with the FLSA, and Plaintiffs therefore should be awarded the unpaid overtime premiums they are owed, plus liquidated damages.  The recommended awards for unpaid overtime wages are as follows:

| | |
|---|---|
| Mr. Lopez: | $    845.00 |
| Mr. Calel: | $  2305.50 |
| Mr. Velasquez: | $  2736.00 |
| Mr. Morena: | $    992.32 |
| Mr. de Souza: | $20,306.00 |

Total award under FLSA:    $27,184.82

The total recommended damages award is $55,207.82.

*b. Attorney's Fees*.

The FLSA mandates payment of reasonable attorney's fees and costs to prevailing plaintiffs, 29 U.S.C. § 216(b); the MWPCL permits, but does not mandate such awards.  *E.g.,*

*Friolo v. Frankel,* 373 Md. 501, 515 (2003). I recommend that the Court award attorney's fees and costs under FLSA.[6]

In awarding attorney's fees under the FLSA, the Court should begin by determining the lodestar; "the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The number of hours it was reasonable to devote to the case, and the reasonable hourly rates charged by personnel working on the case, are to be determined through consideration of the twelve *Johnson* factors, derived from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), and endorsed in *Hensley*, 461 U.S. at 430 n.3. *Daly v. Hill,* 790 F.2d 1071, 1078 (4th Cir. 1986). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717-19. Additional circumstances may be taken into account which render the product of reasonable hours times reasonable rates an unduly high or low award of attorney's fees, such as the achievement of "exceptional success," which may justify an upward adjustment of the fee award. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley,* 461 U.S. at 435.

---

[6] The standards for determining the amount of attorney's fees awards under the FLSA and MWPCL are substantially similar. *See generally Hensley v. Eckerhart,* 461 U.S. 424 (1983); *Friolo v. Frankel,* 373 Md. 501 (2003). In addition, the court's discretion to award attorney's fees under the MWPCL is "to be exercised liberally in favor of awarding fees . . . in appropriate cases." *Friolo*, 373 Md. at 515.

Defendants do not challenge the attorney's fees requested by Plaintiffs, but the Court must still conduct its own analysis of their reasonableness.  The *Johnson* factors that pertain to determining the number of hours reasonably expended on this case include the time and labor required, the difficulty of the issues, the amount in controversy and results obtained, and awards in similar cases.

Counsel has provided a detailed log of time spent litigating the case and the affidavit of Philip Zipin, Esq., attesting to the reasonableness of the hours expended.  Dkt. No. 16, Ex. 1. The entries in this log appear to be generally reasonable, particularly in light of the fact that the case involved five Plaintiffs, none of whom is fluent in English.[7]  The issues were not particularly complicated or difficult, especially for attorneys who are specialists in the field, and accordingly, the log reflects only one entry that includes time spent on legal research.  The amount in controversy is reasonably related to the time spent, and no enhancement is sought or warranted for the results achieved, which, while highly favorable, were obtained without opposition.

A review of similar cases reveals that attorney's fees are most often awarded in the amount requested in FLSA cases in which a default judgment is obtained.  The amount of fees typically awarded generally corresponds to the number of plaintiffs and amount of damages awarded, and these factors indicate that the present request is reasonable.  *See, e.g., Budanio v. Saipan Marine Tours, Inc.,* 22 Fed. Appx. 708, 710-12 (9th Cir. 2001) (awarding the requested $8,380 in attorney's fees pursuant to default judgment in FLSA case, in which attorney represented four plaintiffs); *Wallace v. The Kiwi Group, Inc.,* 247 F.R.D. 679, 684-85 (M.D. Fla. 2008) (awarding $3,345 in attorney's fees pursuant to default judgment in FLSA case, in which

---

[7] An interpreter was required during their hearing testimony.

attorney logged 22.3 hours, represented two plaintiffs and obtained a damages award of

$22,944).  I recommend that the Court find the 40.7 hours[8] logged by the Plaintiffs' attorneys to

be a reasonable number of hours expended on this matter.

The relevant *Johnson* factors also include the preclusion of other employment due to

having accepted the case, the nature and length of the relationship with the client, the

undesirability of the case, the skill requisite to perform legal services, and the experience,

reputation and ability of the attorneys.  According to Mr. Zipin's affidavit, these attorneys had

not previously represented the Plaintiffs and were not precluded from accepting other work by

accepting this case; therefore, these factors will not justify any adjustment to the fees normally

charged for this kind of work.  Dkt. No. 16, Ex. 1, ¶¶ 9, 12.  Although, as Mr. Zipin notes, *see*

Dkt. No. 16, Ex. 1, ¶ 15, Plaintiffs' attorneys risked being uncompensated for their work on this

case due to their clients' indigence, risk of non-payment is not by itself enough to justify an

enhanced fee award, *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 989 (4th Cir. 1992) (citing

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 726 (1987)

(plurality opinion)), and no enhancement is requested here.

As to the skill required and the reputation and experience of the attorneys, this case

involved uncomplicated issues that are frequently litigated, and did not require an extraordinarily

high level of skill.  The attorneys who worked on the case are, as noted, employment specialists.

Mr. Zipin was admitted to the bar in 1982, has been practicing for 26 years, Dkt. No. 16, Ex. 1,

¶¶ 1-2, and has an extensive history as lead counsel in employee rights cases, *id.,* ¶¶ 4-5. The

guidelines set forth in the Local Rules, Appendix B, Section 3, prescribe a rate of $275-$400 for

---

[8] Hours expended are based on the time log submitted by Plaintiffs' attorneys, Dkt. No. 16, Ex. 1.  The total hours for which reimbursement is requested in the body of Mr. Zipin's affidavit, *see id.,* ¶ 11, reflect a slight discrepancy with the time log, and will be disregarded.

attorneys admitted for fifteen years or more.  I recommend that the Court find Mr. Zipin's

requested hourly rate of $400 to be reasonable.  Nancy Brewer, lead attorney on this case,

completed law school in 1992, and has been practicing for fifteen years.  *Id.,* ¶ 8.  She is also

experienced in the area of employee rights, having previously served as an EEOC trial attorney.

*Id.*  Plaintiffs have requested reimbursement at an hourly rate of $350 for Ms. Brewer's work.

As Ms. Brewer's experience places her at the low end of the Guidelines scale, I recommend that

the Court reimburse at the rate of $300 per hour for the hours logged by Ms. Brewer.

In sum, the recommended award of attorney's fees to Plaintiffs is $80.00 for the .2 hours

logged by Mr. Zipin, reimbursed at $400 per hour; and $12,150 for the 40.5 hours logged by Ms.

Brewer, reimbursed at $300 per hour.  The total recommended attorney's fee award is $12,230.

c.  *Costs of the action.*

Payment of costs to a prevailing plaintiff is mandatory under the FLSA, while the amount

of costs charged to defendants is committed to the court's discretion.  29 U.S.C. § 216(b); *Roy,*

141 F.3d at 549.  In the context of fee-shifting under other civil rights statutes, the costs that may

be charged to losing defendants include "those reasonable out-of-pocket expenses incurred by

the attorney which are normally charged to a fee-paying client, in the course of providing legal

services."  *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (citing *Northcross v. Board of*

*Educ. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir.1979)); *Daly,* 790 F.2d at 1084.

Examples of types of costs that have been charged to losing defendants include necessary court

costs, travel, photocopying, postage, and computer research.  *Vaughns v. Board of Educ. of*

*Prince George's County*, 598 F. Supp. 1262, 1289-90 (D. Md. 1984).

The costs for which Plaintiffs seek reimbursement are well within the categories of

normal and necessary costs of litigation that would normally be charged to paying clients:  $350

filing fee; $200 for service of process; $27.72 for postage; and $57.75 for copies.  I recommend

that the Court award $635.47 in litigation costs.

## III. Conclusion.

For the foregoing reasons, I recommend that the Court award Plaintiffs $55,207.82 in

damages, $12,230.00 in attorney's fees, and $635.47 in costs, for a total of $68,073.29.


Date:  May 23, 2008                                 _____/S/_____
                                                                  JILLYN K. SCHULZE
                                                          United States Magistrate Judge